IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Addie D. Campbell, | ) | C/A No.   0:09-411-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| The School District of Chester County, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Addie D. Campbell ("Campbell"), filed this employment discrimination case pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and 42 U.S.C. §§ 1981 and 1983 against her former employer, the school district of Chester County, South Carolina ("the School District"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the School District's motion for summary judgment. (ECF No. 30.) Having carefully considered the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

## BACKGROUND

Viewed in the light most favorable to Campbell, the following facts appear pertinent to resolution of the defendant's motion. Campbell, an African American female, worked as a custodian for the School District from 2003 until she was terminated in August of 2007. Campbell's supervisors included Willie Jones, who is also African American; the school principal, H. L. Erwin, who is also African American; and the Director of Maintenance, James Funderburk, who is Caucasian. In 2006, Funderburk appointed Campbell as team leader of the custodial staff in her

assigned building. In this role, Campbell was responsible for general housekeeping responsibilities, ensuring that the crew remained on task and that supplies remained stocked. Unbeknownst to Campbell, the School District began receiving complaints about Campbell's management style and interactions with the custodial staff, students, parents, and teachers.

Additionally, in May of 2007, Campbell was scolded for allowing parents to use the kitchen area of the cafeteria during a band event. Campbell maintains that when she became aware that parents were using the kitchen in violation of school policy, she contacted the cafeteria director, Viola Williams, who permitted the parents to continue to use the kitchen. Additionally, Campbell reported the incident to Principal Erwin the next day. Campbell was counseled on the procedures and policies regarding the use of the cafeteria kitchen; however, the band director and the cafeteria director who had allowed the parents to use the facilities were not counseled or disciplined in any way.

In August of 2007, Erwin met with Campbell and informed her of the complaints against her and that he was recommending that Campbell be transferred to a different location. Campbell requested a meeting with Rita Stringfellow, the Executive Director of Human Resources. Stringfellow is Caucasian. Campbell's meeting with Stringfellow did not go smoothly. Following that meeting, Stringfellow recommended that Campbell be terminated, and the School District discharged her.

PJG

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor.  Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms.  See id. at 148 (stating that "[c]ertainly there

PJG

will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

## B.    Burden Shifting

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, as in this case, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, " 'the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.' " Id.

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt,

601 F.3d at 294 (quoting <u>Burdine</u>, 450 U.S. at 256) (alterations in original); <u>see also</u> <u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. <u>Burdine</u>, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." <u>Reeves</u>, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. <u>Id.</u> Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." <u>Id.</u> at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." <u>Merritt</u>, 301 F.3d at 294-95.

## C. Campbell's Claims

### 1. Discriminatory Discharge

To obtain relief based upon alleged race discrimination under Title VII, a plaintiff must demonstrate that: (1) she is a member of the protected class; (2) she suffered an adverse employment action; (3) at the time of the adverse action, she was performing at a level that met the employer's

legitimate expectations; and (4) her position remained open was filled by a similarly qualified individual outside the protected class. Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2006) (quoting Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*)); see also St.Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). In the present case, only the third and fourth prongs are at issue. (See Def.'s Mem. Supp. Mot. Summ. J. at 13, ECF No. 30-1.)

With regard to whether Campbell was meeting the School District's legitimate expectations, the relevant time to evaluate an employee's performance is at the time of the adverse action. See, e.g, Miles, 429 F.3d at 485 (stating that the third factor of a *prima facie* case includes that "she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action"). Moreover, in determining satisfactory job performance, it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (Title VII) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996)). An employer's expectations of its employees are "legitimate" when they are honestly held; whether the employee agrees with those expectations is not the test. Thornley v. Penton Pub., Inc., 104 F.3d 26, 30 (2d Cir. 1997) (stating that "a plaintiff must satisfy the employer's honestly-held expectations"). In this context, the term "legitimate" means that expectations cannot be a "sham designed to hide the employer's discriminatory purpose." Warch, 435 F.3d at 518.

Here, Campbell relies upon her two most recent evaluations prior to her termination, which ranked her interpersonal skills as "outstanding" and "average" respectively, to show that she was



meeting expectations. However, even accepting as true that her supervisors viewed her interpersonal skills as average in April of 2007, Campbell has presented no evidence showing that her interpersonal skills were acceptable to her employer in August of 2007. Rather, the record shows that as of August 9, 2007, Principal Erwin decided to recommend her for a transfer due to her lack of professionalism. (See Erwin Letter, ECF No. 34-2.) Erwin's letter describes incidents that he clearly viewed as involving unprofessional conduct by Campbell, including incidents that occurred in late July and August of 2007. Similarly, after the stormy conference with Stringfellow the following Monday, Stringfellow concluded that Campbell's "lack of tact, poor interpersonal skills and uncooperativeness in dealing with coworkers, other employees and the public" warranted termination. Based on this record, and despite an average interpersonal skills rating at her April evaluation, no reasonable jury could find that the School District did not genuinely expect Campbell to conduct herself more professionally at the time it terminated her.

For these same reasons, even if Campbell could establish a *prima facie* case, she has presented no evidence from which a reasonable jury could find that the School District's proffered legitimate, nondiscriminatory reason for terminating her was a pretext for unlawful race discrimination. See O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 547 (4th Cir. 1995) (stating that a positive review in January was irrelevant to the determination of whether the employee was performing adequately when terminated in August), rev'd on other grounds, 517 U.S. 308 (1996) (ADEA); Anderson v. Stauffer Chem. Co., 965 F.2d 397, 401 (7th Cir. 1992) (stating that positive evaluation five months before termination was not determinative of the question of whether the employee was meeting expectations at the time of discharge); see also Holland v. Washington Homes, Inc., 487 F.3d 208, 217-18 (4th Cir. 2007) (concluding that no reasonable juror

PJG

could conclude the decision maker's reason was pretextual where the plaintiff's evidence "failed to address whether [the decision maker] did not honestly believe that the threats were made" and noting that " '[i]t is the perception of the decisionmaker which is relevant' ") (quoting Tinsley v. First Union Nat'l Bank, 155 F.3d 435 (4th Cir. 1998)). The evidence Campbell offers to show pretext is not probative of this issue. Even accepting as true Campbell's justification of her conduct regarding the complaints by parents, teachers, and staff, nothing in the record shows that the School District's assertion that Campbell did not handle these incidents professionally is false or that race discrimination was the true reason that Campbell was discharged. Similarly, the evidence she offers from one member of the custodial staff that he never witnessed Campbell act unprofessionally is insufficient to show that she did not ever do so. (Crockett Dep. at 15:22-25, 21:14-22, 37:19-23, ECF No. 34-8 at 16, 22, 38.)

Moreover, even if Campbell could show she was meeting her employer's expectations at the time of her termination, she cannot show that she was replaced with a person outside the protected class. Campbell initially conceded in her deposition that she was replaced by Jeff Killian, an African American. In opposition to the School District's motion, however, Campbell submitted an affidavit from Tina Lowder Walters stating that Walters, who is Caucasian, was initially promised Campbell's position. Campbell thus contended that the School District altered its initial plan to replace Campbell with a Caucasian so as to disguise its discriminatory conduct against Campbell. See Miles, 429 F.3d at 486 (stating that the Fourth Circuit has recognized exceptions to the fourth prong of the *prima facie* case, including that the employer's hiring of another person within the protected class was calculated to disguise the discriminatory act) (citing Brown v. McLean, 159 F.3d 898, 905

(4th Cir. 1998)). The court then re-opened discovery to permit the School District to depose Walters and allowed the parties to supplement their briefs on this point.

As supplemented, the record does not bear out Campbell's assertion. First, as noted above, Campbell herself initially claimed that she was replaced by Killian, an African American. Second, Walters stated in her deposition that she did not know whether Jones, who allegedly "promised" her Campbell's job, had authority to do so and merely based her belief that the job was hers on her conversation with Jones. (Walters Dep. at 29:15-30:18; ECF No. 46-2 at 29-30.) Furthermore, Walters herself opined that Killian ultimately was given the job because he was Jones's nephew. Significantly, the only evidence in the record shows that Killian was hired in September of 2007, the month following Campbell's termination. Nothing in the record shows that the School District had been provided notice or been made aware of Campbell's September 12, 2007 administrative charge alleging discrimination at the time the School District hired Killian. (See Pl.'s Mem. Opp'n Summ. J. at 3, ECF No. 34 at 3.) Based on the record, no reasonable jury could determine that Killian was hired to disguise any discriminatory conduct against Campbell or that the School District's proffered reason for discharging Campbell was a pretext for discrimination. Accordingly, the School District is entitled to summary judgment on Campbell's race discrimination claim.

### 2. Retaliation

Title VII's anti-retaliation section provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, Campbell must show: (1) that she engaged in protected activity; (2) that an adverse employment action was taken against her; and (3) that there was a causal link between the protected activity and the adverse employment action. See Lettieri v. Equant Inc., 478 F.3d 640, 650 & n.2 (4th Cir. 2007) (Title VII); Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253 (4th Cir. 1998) (Title VII); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (ADEA and Title VII). For purposes of the instant motion, only the third element is in dispute.

First, much of Campbell's asserted protected activity is too attenuated from her termination to establish a causal connection. Campbell herself appears to recognize this, but claims that her complaints as to the School District's treatment of her following the incident regarding the cafeteria kitchen are sufficiently temporally related to establish a causal connection. (Pl.'s Mem. Opp'n Summ. J. at 13-14, ECF No. 34 at 13-14.) This incident, which occurred in April of 2007, preceded her termination by approximately three months. As such, it is likely alone insufficient to show a causal connection. See Pascual v. Lowe's Home Centers, Inc., 193 Fed. Appx. 229 (4th Cir. 2006) (unpublished) (*per curiam*) (holding that the plaintiff had failed to establish a causal connection by temporal proximity alone when "at least three to four months" separated the claimed protected activities and the termination of the plaintiff's employment). Moreover, Campbell has introduced no evidence that the undisputed decision maker, Stringfellow, was aware of her complaints of discrimination related to the kitchen incident. Although she makes the general contention that the knowledge of the supervisors at the middle school at which she was assigned should be imputed to Stringfellow, who is the Human Resources Director for the School District, she cites no authority in law for this sweeping statement and provides no basis in fact from which a reasonable jury could

find that Stringfellow was aware of Campbell's purported protected activity. See Brungart v. Bellsouth Telecomm., Inc., 231 F.3d 791, 800 (11th Cir. 2000) (declining to adopt an "imputed knowledge" theory that knowledge possessed by others is imputed to a decision maker).

Campbell also argues that she has presented evidence of animus and other retaliatory conduct in the intervening period. See Lettieri, 478 F.3d at 650 ("In cases where 'temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus.'") (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)). In support of this argument, she asserts that she complained that another employee, Diane Warnick, was not doing her job and that Warnick was permitted to engage in activities that other custodians were not. Campbell has failed to show, however, how the defendant's alleged better treatment of *Warnick* constitutes evidence of retaliation against *Campbell* for engaging in protected activity.

Because Campbell cannot establish a *prima facie* case of race discrimination, the School District is entitled to summary judgment on that claim. Moreover, because her civil rights claims under 42 U.S.C. §§ 1981 and 1983 rise or fall with her Title VII claim, those claims fail as well. Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985) ("Under Title VII and either § 1981 or § 1983, the elements of the required prima facie case are the same.").

### 3. Hostile Work Environment

Title VII prohibits creating or allowing a hostile work environment based on race, color, religion, sex, or national origin. See Baqir v. Principi, 434 F.3d 733, 746 n.14 (4th Cir. 2006). Such an environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's

PJG

employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks & citations omitted) (Title VII).  However, "[w]orkplaces are not always harmonious locales." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (Title VII).  Moreover, federal anti-discrimination laws are not "general civility code[s]." Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (Title VII).

To establish a *prima facie* case of harassment based on race, a plaintiff must show:  (1) she was harassed because of her race; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (4) some basis exists for imputing liability to the employer.  See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998).  To meet the causation element, a plaintiff must show that "but for" the protected characteristic, she would not have been a victim of harassment.  See id.  The federal anti-discrimination statutes do not protect employees from hostility and abuse from their supervisors unless the objectionable conditions occur because of a protected characteristic.  See Graham v. Prince George's Cnty., 191 Fed. Appx. 202, 204 (4th Cir. 2006) (unpublished) (finding the district court did not err in determining that "although [the] facts reflected an unpleasant working environment, they did not support a hostile one based on an unlawful characteristic"); see also Oncale, 523 U.S. at 80; Shirer v. Tri-County Elec. Coop., Inc., C/A No. 5:07-1156-MBS, 2009 WL 2900767, at *8 (D.S.C. Sept. 9, 2009).

Further, when analyzing the third element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance.  See Harris, 510 U.S. at

23; Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996); see also Sunbelt Rentals, Inc., 521 F.3d at 315-16 (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard).

Campbell has failed to establish a *prima facie* case of a hostile work environment based upon her race. The conduct she characterizes as harassment includes the defendant's ignoring her complaints and not making her aware of the complaints it had received against her until shortly before she was terminated. This conduct simply does not rise to the level required by law to establish a hostile work environment. Compare E.E.O.C. v. Central Wholesalers, Inc., 573 F.3d 167, 176 (4th Cir. 2009) (finding alleged gender-based and race-based harassment was sufficiently severe or pervasive where co-workers referred to women as b* * *hes and a co-worker in a cubicle next to the plaintiff had Playboy items, watched pornography in front of her, had a pornographic screensaver, and placed a screwdriver in a Halloween decoration in a sexual manner and where co-workers used racial epithets, some directed at the plaintiff, and two co-workers "kept blue-colored mop-head dolls in their offices which they had hanging by nooses tied around the dolls' necks") and Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001) (holding that supervisor's constant, even daily, use of racial epithets was sufficiently severe or pervasive to survive summary judgment) and Smith v. First Union Nat'l Bank, 202 F.3d 234 (4th Cir. 2000) (concluding that "a barrage of threats and gender-based insults" that the plaintiff's supervisor directed at her and that occurred more than thirty times in the first few weeks of the plaintiff's employment was sufficiently severe or pervasive to survive summary judgment) and Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d

PJG

1126, 1131 (4th Cir. 1995) (finding the alleged harassment was sufficiently severe or pervasive because an Iranian plaintiff was called "names like 'the local terrorist,' a 'camel jockey' and 'the Emir of Waldorf' " on an almost daily basis) with McNeal v. Montgomery Cnty., Md., 307 Fed. Appx. 766, 776 (4th Cir. 2009) (unpublished) (stating that "five accusations of theft and [the supervisor's] requirement that [the plaintiff] bring in doctor's notes and provide for more detail about his sick leave hardly rise to the level of 'hostile or abusive' treatment") and Hopkins, 77 F.3d 745 (acknowledging that the conduct and sexual comments at issue were "inappropriately forward," but finding the alleged harassment was insufficiently severe or pervasive where the conduct occurred over several years, most sexual comments and conduct occurred in group settings, and the supervisor never "made an overt sexual proposition or touched [the plaintiff] in a sexual manner"). Moreover, to the extent Campbell relies upon the same evidence for her hostile work environment claim that she presented in support of her claim of disparate treatment, this claim fails for the same reasons.

### 4. Disparate Discipline Claim

Finally, Campbell suggests in her memorandum that she has also asserted a claim of disparate discipline—which she characterizes as "disparate treatment"—that the School District did not adequately address. To the extent Campbell attempts to assert a claim of disparate discipline in addition to her claim of discriminatory discharge, the court finds that it too fails as a matter of law. To go forward on a claim of disparate discipline, a plaintiff must show: (1) that she engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin; and (2) that disciplinary measures enforced against her were more severe than those enforced against the other person. Lightner v. City of Wilmington, 545 F.3d 260, 264-65 (4th Cir. 2008). Campbell's claim regarding discipline revolves around the incident of the parents' use of the cafeteria kitchen;



however, Campbell has not shown that she was actually disciplined in any way as a result of this incident.

## RECOMMENDATION

Campbell's claims fail as a matter of law. Accordingly, the court recommends that the defendant's motion for summary judgment be granted.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 20, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).